**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JILLIAN NOVOSEL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  21 CV 3080 |
| | ) | |
| AZCON INC, RETIREMENT and | ) | Judge Rebecca R. Pallmeyer |
| BENEFITS COMMITTEE, as Plan | ) | |
| Administrator of the Azcon, Inc. | ) | |
| Employee Stock Ownership Plan, and | ) | |
| AZCON, INC., d/b/a Azcon Metals, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

In 2015, Jillian Novosel retired from her employment with  Azcon, Inc. ("Azcon"), a scrap

metal processor, and sought to cash out her holdings in Azcon's Employee Stock Ownership Plan

("ESOP") in payments over time.  In this lawsuit, Novosel alleges that Azcon and its Retirement

and Benefits Committee ("Committee"), the administrator of the ESOP, miscalculated her share

value and distributed some $50,000 less than she is entitled to.[1]  On Azcon's motion, the court

dismissed her initial complaint in part.  *See Novosel v. Azcon Inc. Ret.*, No. 21 CV 3080, 2022

WL 672776, at *1–3 (N.D. Ill. Mar. 7, 2022).  Novosel has now filed an amended complaint [22],

asserting three claims for relief.  In Claim I, Novosel alleges that Azcon violated the Employee

Retirement Income Security Act of 1974 ("ERISA") and breached its contract with Novosel by

selecting a valuation date for her shares that shortchanged Novosel.  Claim II alleges that the

Committee's conduct, which reduced her accrued benefits, constitutes an unlawful amendment

---

[1]        Novosel has named as Defendants both Azcon and the Committee, who are
represented by the same attorneys.  According to the plan documents, the Committee is
composed of "one or more members" appointed by Azcon's board of directors.  (2013 Plan, Ex.
4 to Am. Compl. [22-4] at § 11.1; 2017 Plan, Ex. 6 to Am. Compl. [22-6] at § 11.1.)  A prior
settlement agreement between Novosel and the parties here "collectively refers to the Company,
the Plan, and the Committee as 'Azcon.'"  (Settlement Agreement, Ex. 1 to Am Compl. [22-1] at
1.)    In this opinion, the court follows that lead, and refers to Defendants as "Azcon" or
"Defendants."

of the plan in violation of ERISA. Finally, Claim III alleges that Defendants breached an agreement between the parties, in which Azcon agreed to remunerate Novosel for a reduction in the price of shares that she had cashed out in 2015. Novosel alleges that Defendants' failure to use December 31, 2019 as the valuation date for one of her distributions was a breach of the settlement agreement. Defendants have moved to dismiss Claims I and II of the Amended Complaint [24]. For the reasons discussed below, Defendants' motion is granted in part and denied in part. The court denies Defendants' motion regarding Claim I but grants Plaintiff's request for leave to file a second amended complaint, supplementing her allegations in support of that claim. For reasons similar to those stated in its earlier ruling, the court again dismisses Claim II.

## BACKGROUND

The court discussed the facts of this case in greater detail in its earlier opinion—*Novosel v. Azcon Inc. Ret.*, No. 21 CV 3080, 2022 WL 672776, at *1–3 (N.D. Ill. Mar. 7, 2022). The court presumes familiarity with that previous ruling but presents a summary of the facts relevant to the present motion, as well as the additional facts that appear in Novosel's Amended Complaint.

Plaintiff Jillian Novosel began working at Azcon in 1999. (Am. Compl. ¶ 8.) Throughout her employment, Novosel participated in the Azcon ESOP. (See *id.*) After nearly 16 years of employment, and about three years before she would turn 65, Novosel decided to retire early. (*Id.* ¶¶ 7–10, 30.) She made this decision, "in large part, relying on the balance of her ESOP account, which showed nearly $400,000 in assets." (*Id.* ¶ 10.)

A few months later, in November 2015, Novosel learned that she was eligible to "diversify" 50 percent of her 72.7673 shares, at a price she understood to be $1,840 per share.[2] (*Id.* ¶ 11.)

---

[2]     Novosel does not explain the meaning of "diversify" in this context, but the court understands it to mean exchange of the shares in return for their cash value. Section 7.13 of the 2013 Plan explains that "diversification will be accomplished with a distribution of stock to the Participant, which must be put to the Company, with the proceeds transferred to [a savings plan] or paid in cash." (2013 Plan § 7.13, Ex. 4 to Am. Compl. [22-4].) In practical terms, it appears to

She decided to take that option, but some time later—Novosel does not specify when—she received a letter from Richard Secrist,[3] on behalf of Azcon, informing her that the price per share in the ESOP was just $165, far less than the amount Novosel had understood they were worth. (*Id.* ¶ 12.) Azcon purchased Novosel's shares and paid her a total of $12,006.60. (Settlement Agreement, Ex. 1 to Am. Compl. (hereinafter "Settlement Agreement") [22-1] at 1.) Alarmed by this sharp decrease, Novosel filed administrative claims against Azcon contesting the reduction, and, on November 17, 2017, the parties entered into a written agreement to settle those claims. (*Id.* ¶¶ 13–14; Settlement Agreement [22-1] at 2.) According to the Settlement Agreement, Novosel rescinded her diversification election and agreed to repay Azcon the $12,006.60 she had received. (*Id.*) Novosel would repay the $12,006.60 by taking a reduced payout when the time came. Novosel would receive an initial distribution of stock shares in 2019, the value of which would be based on the appraised value of the ESOP as of December 31, 2018, minus $12,006.60. (Am. Compl. ¶ 15.) If, based on that valuation, that initial distribution would be less than $12,006.60, the remainder that Novosel owed to Azcon would "reduce the amount paid by [Azcon] to purchase subsequent distributions of [Azcon] stock." (Settlement Agreement [22-1] at 2.) Novosel alleges that Azcon agreed to pay her in two lump sums, but the language of the parties' written settlement agreement is not that specific. (*See* Am. Compl. ¶ 15; Settlement Agreement [22-1] at 1–2.) *Novosel*, 2022 WL 672776, at *2. Instead, the settlement agreement references "subsequent distributions," suggesting that Novosel would (or could) receive more than one additional payment. (Settlement Agreement [22-1].)

Novosel alleges that, under the terms of the November 17, 2017 agreement, her second payment should have been based on a December 31, 2019 valuation, which turned out to be

---

the court that Novosel expected Defendants to buy back 72.7673 of her shares at $1,840 per share, or $133,891.83.

[3] Novosel does not identify Richard Secrist's role at Azcon, though she does state that he is a fiduciary of the ESOP. (Am. Compl. ¶ 24.)

$1,055.60 per share, for a total of $114,409.10. (Am. Compl. ¶¶ 15, 17.) But on August 3, 2020, when Novosel expected to collect that second payment, she instead received written notice that the Committee had undertaken an "interim valuation," which resulted in her stock being valued at just $561.20 per share. (*Id.* ¶ 22.) In a letter to ESOP shareholders,[4] Louis J. Mantia, Jr.—Azcon's Treasurer and Secretary—provided notice of the interim valuation and justified it by explaining that the COVID-19 pandemic "had a significant financial impact on [Azcon's] business." (Azcon Aug. 3, 2020 Letter to Shareholders, Ex. 2 to Am. Compl. (hereinafter "Azcon Letter") [22-2].) As a result, according to Mantia's letter, Azcon directed the ESOP trustee to hire an "independent valuation firm" to calculate an interim valuation "consider[ing] the economy, market conditions, the company's performance and the company's performance compared to others in the industry." (*Id.*) At some point subsequent to the date of this letter, Novosel received $561.21 per share, or $60,824, as her second distribution—$53,585 less than she believes she was due. (Am. Compl. ¶ 22.)

The central question of this lawsuit is whether Azcon's interim valuation was lawful. Novosel contends that Defendants violated written procedures of the 2013 Plan and federal law by conducting an interim valuation and setting the valuation date in April 2020—a particularly harrowing month in economic history. On Novosel's view, the plan documents make clear that the price of her shares should have been set by a December 2019 valuation. One such document is the 2013 Summary Plan Description (SPD), which states that the "value of the ESOP stock is determined once each year, as of the last day of the plan year." (*Id.* ¶ 32; 2013 Summary Plan Description, Ex. 5 to Am. Compl. ("SPD") [22-5] at 7.) Other plan documents provide additional detail. Section 1.5 of the 2013 Plan defines "accounting date" as "the last day of each Plan Year *and* an Accounting Date occurring under subsection 12.4 *and* an Accounting Date as may be

---

[4]     The letter is addressed to "Azcon, Inc. Shareholder." (Azcon Letter [22-2].) The parties have not made clear how many persons received this letter or what prompted Mr. Mantia to send it on August 3.

determined by the Committee in a uniform and nondiscriminatory manner."  (Am. Compl. ¶ 27; 2013 Plan § 1.5 (emphasis supplied).)  Additionally, Section 7.5 states, in relevant part, that "[d]istribution of the balance of a Participant's Accounts shall be made or shall commence . . . as soon as practicable after the close of the Plan Year in which the Participant attains Normal Retirement Age."  (Am. Compl. ¶ 29; 2013 Plan § 7.5.)

Novosel contends that the Committee's interim valuation does not comport with these provisions because, contra Section 1.5, the Committee did not set the valuation in "a uniform and nondiscriminatory manner," but rather in an "arbitrary and capricious" one.  In her Amended Complaint, Novosel brings three claims for relief.  First, she charges Azcon with breach of contract in violation of ERISA § 502, for failure to pay her a second lump sum at the December 31, 2019 valuation price.  (Am. Compl. ¶¶ 23–37; 29 U.S.C. §§ 102(a), 1024(b).)  Second, she claims Defendants' conduct amounted to a "cutback" of her accrued benefits in violation of ERISA § 204.  (Am. Compl. ¶¶ 38–49; 29 U.S.C. § 1054(g).)  Third, she claims Defendants breached the terms of the November 2017 settlement agreement when they made the 2020 distribution.  (Am. Compl. ¶¶ 35–41.)  Defendants move to dismiss Claims I and II but do not at this time challenge the court's earlier determination that Novosel has adequately pleaded a claim for breach of the settlement agreement.  (*See* Mem. in Supp. of Mot. to Dismiss ("Defs.' Br.") [25]; *see Novosel*, 2022 WL 672776, at *8–9 (denying motion to dismiss Claim III).)

## DISCUSSION

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of a complaint.  *See* FED. R. CIV. P. 12(b)(6); FED. R. CIV. P. 8(a)(2).  A complaint must "sufficiently give to the defendants 'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor, but it need not do the same for legal conclusions or

5

"threadbare recitals" supported by only "conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021).

## I.   Arbitrary and Capricious Plan Administration

When distributing plan benefits, administrators have a duty to adhere to the provisions in plan documents. *See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 286 (2009). The plan documents in this case give the administrator discretion. Though inelegantly drafted, Section 1.5—defining "accounting date" as "the last day of each Plan Year *and* an Accounting Date occurring under subsection 12.4 *and* an Accounting Date as may be determined by the Committee in a uniform and nondiscriminatory manner"—contemplates that the Committee could select the last day of a plan year or an alternative date for valuation.[5] *See Novosel*, 2022 WL 6672776, at *4–5. Therefore, because the Committee's "discretion is clear from the language of the plan," the court will set aside the Committee's decision "only if it is arbitrary and capricious." *Black v. Long Term Disability Ins.*, 582 F.3d 738, 743–44 (7th Cir. 2009)

### A.   The Amended Complaint

Novosel's Amended Complaint takes issue with three aspects of the interim valuation: the date selection, the drastic result, and its unprecedented nature. As explained below, the court concludes that, interpreted generously, her allegations in Claim I state a plausible claim for relief.

---

[5]   In its earlier ruling, the court remarked on the confusing use of the word "and" (apparently meant to mean "or") in Section 1.5 of the 2013 and 2017 plan documents. *Novosel*, 2022 WL 6672776, at *4. At that juncture, Defendants argued that Section 11.1 of the plan vests the Committee with "[c]omplete discretion to interpret and construe the provisions of the Plan" and that the Committee interprets "and" as "or" in this context. (Defs.' First Mem. in Supp. of Mot. to Dismiss [14] at 3, 8.) In accepting this argument, the court noted that Novosel had provided no explanation for how to read the plan's language in a manner that supports her claim. *Novosel*, 2022 WL 6672776, at *4. The court interpreted the third definition of "accounting date" to provide the Committee with the ability to select a date other than "the last day of each Plan Year [or] an Accounting Date occurring under subsection 12.4"—so long as the Committee chooses this date in an "uniform and nondiscriminatory manner." *Id.* at *5. The court noted that Novosel had not specifically argued that the Committee abused its discretion by selecting an accounting date in an arbitrary and capricious manner. *Id.* In her briefing on the motion now before the court, she does present that argument.

Because the record suggests additional support for this claim, as well, the court grants leave for filing of a second amended complaint.

### 1. Date Selection

The Amended Complaint alleges that the SPD states that the "value of ESOP stock is determined once each year, as of the last day of the plan year."[6]  (Am. Compl. [22] ¶ 32; 2013 Summary Plan Description, Ex. 5 [22-5] at 7.)  Defendants argue that Novosel's reliance on the SPD is misplaced because the plan document controls, not the SPD.[7]  *See Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Haynes*, 966 F.3d 655, 659 (7th Cir. 2020) (citing *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011)), cert. denied, 141 S. Ct. 2569 (2021).  In *Haynes*, the plaintiff, a young woman who won a tort suit against a hospital after her father's ERISA plan had paid her medical bills, argued that she should not be bound by a subrogation and repayment clause that was absent from the SPD but stated in the plan document itself.  *Haynes*, 966 F.3d at 65.  The Seventh Circuit disagreed, stating that "[a]t all events, if the plan and the summary plan description conflict, the plan controls."  *Id.* at 659.  Here, the plan document itself authorizes Azcon to undertake an interim valuation when doing so is necessary to fulfill its fiduciary duties to plan beneficiaries.  (2013 Plan § 1.5.)  Assuming Azcon could show this interim valuation was necessary for fulfilling its fiduciary obligations, Azcon has the better of the argument on this point.

Novosel also alleges that the interim valuation was arbitrary and capricious.  On June 15, 2020 Mantia emailed the Committee suggesting an interim valuation due to COVID-19's

---

[6]  The SPD itself specifically states that the last day of the plan year is December 31st.  (2013 Summary Plan Description, Ex. 5 [22-5] at 7 ("Unlike investments in the 401(k) plan, which are valued daily according to the stock market, the value of the ESOP stock is determined once each year, as of the last day of the plan year (December 31).").)

[7]  Defendants cite for support *Mers v. Marriott Int'l Grp. Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1023 (7th Cir. 1998).  That case, however, predated *Cigna* and is no longer entirely good law.  In *Mers*, the Seventh Circuit stated it "allow[s] a participant or beneficiary to rely on the SPD and estop the plan administrator from denying coverage because of terms not included in the SPD only if there is a direct conflict between the SPD and the underlying policy."  *Id.*  After *Cigna*, such estoppel is no longer available.  *See CIGNA Corp.*, 563 U.S. at 438 (2011).

detrimental market effects, topics which Mantia says the Board of Directors discussed at a Special Meeting on April 15, 2020. (Am. Compl. ¶ 18; June 15, 2020 Mantia Email, Ex. 3 to Am. Compl. [22-3].) The Amended Complaint then alleges:

> Mantia, and the Committee members, acted arbitrarily and capriciously, in choosing April 15, 2020 (two months before Mantia's e-mail), as the Accounting Date.[8] They chose the date at which time the Company's performance was likely worse than June 15, 2020, or any date later than June 15, 2020.

(Am. Compl. ¶ 34.) The Amended Complaint does not offer further specifics, but appears to infer that by June 2020, the national economy had begun to recover from its springtime lows, and that, by June, the Committee knew or should have known that finances were on the upswing.

### 2. Degree of Devaluation

Novosel also takes issue with the severity of the valuation's effect. Novosel alleges that, because the Committee projected the ESOP's revenue would decrease by just 35% in 2020, the committee acted arbitrarily and capriciously when it agreed to devalue the ESOP stock by 50%. (Am. Compl. ¶ 35.) To bolster this allegation, Plaintiff asserts that the valuation failed to consider a $1,260,000 PPP loan,[9] which Azcon had reason to believe would likely be forgiven. (*Id.*) Defendants make two arguments in response. First, Defendants contend that this allegation improperly "presume[s] Defendants were omniscient about the effects of the COVID-19 pandemic, notwithstanding that in the Spring of 2020, businesses across the globe were navigating unprecedented chaos." (Defs.' Br. at 4–5.) Second, Defendants contend they had no control over the independent interim valuation process, which was performed by an independent ESOP appraiser hired by the trustee of the plan. (*Id.* at 5–6.) As to Azcon's first point, while Plaintiff's allegations are indeed being made with the benefit of hindsight, Azcon has failed to

---

[8] The Amended Complaint misstates the date: the Committee set April 30, 2020 as the valuation date. (*See* Aug. 3, 2020 Letter to Shareholders, Ex. 2 to Am. Compl. [22-2].)

[9] A Paycheck Protection Program (PPP) loan is a forgivable loan that the federal government offered to small business as part of the Coronavirus Aid, Relief, and Economic Security Act. *See* https://www.sbc.senate.gov/public/index.cfm/paycheck-protection-program.

respond to Plaintiff's point that a 50% devaluation (rather than a 35% reduction) was excessive. As for the second point, Azcon ignores that the independent appraiser acted as Azcon's agent. The court concludes these allegations are sufficient to bring Plaintiff's claim across the line of plausibility.

### 3.    Unprecedented Nature

Finally, the Amended Complaint alleges that "[t]he Committee had never sought an interim valuation before." (Am. Compl. ¶ 36.) Defendants correctly point out that "Plaintiff makes no effort to allege how taking an unprecedented measure when faced with unprecedented circumstances constitutes arbitrary or capricious behavior." (Defs.' Br. at 7.) In any event, as Defendants note, the allegation is arguably disingenuous; Novosel is well aware that the valuation she challenges here was not the first interim valuation. It was an earlier interim valuation that gave rise to the dispute that resulted in the parties' prior settlement, which is the subject of Claim III of the Amended Complaint. (*Id.*) So long as the valuation complies with the plan documents, the fact that it was "unprecedented" would not by itself mean that it violated ERISA.

### B.    New Facts Alleged

Novosel's allegations concerning the interim valuation, viewed generously, thus state a claim. Moreover, in her brief in response to the motion to dismiss, Novosel has bolstered those allegations. Although a plaintiff may not amend a complaint by briefs in opposition to a motion to dismiss, the court may "consider additional facts set forth in" a brief opposing dismissal, "so long as those facts are consistent with the pleadings." *O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 935 (N.D. Ill. 2021) (quoting *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (internal quotation marks omitted); *see also In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 938–9 (N.D. Ill. 2018) (collecting authority). Novosel has done so here. In her brief, Novosel cites publicly available records showing that on April 8, 2020, Azcon was approved for a (now forgiven) PPP Loan of $1,260,000. (Pl.'s Resp. [27] at 3.) Plaintiff observes that "the funds were certainly not disbursed immediately (by the April 30 valuation date.)" (*Id.*;

9

PPP Loan Data, Ex. 5 to Pl.'s Resp. [27-5].)  She argues it is reasonable to infer that, based on this timing, the interim valuation did not account for the anticipated PPP funds.  (Pl.'s Resp. at 3.)

In addition, Novosel also cites financial records that Azcon filed with the Department of Labor ("DOL") on October 14, 2021 (after this lawsuit was filed), showing that, as of December 31, 2020, the ESOP held $13,999,855 in assets, 49 percent more than the 2019 value of $9,400,023.  These figures are at odds with the statements Azcon made to Novosel justifying the interim valuation: "sales are down, order books are decreased, projects are getting delayed, etc. and that is affecting our overall profitability."  (Azcon Letter [22-2].)  To the contrary, 2020 marked a record year for the ESOP; $13,999,855 was the most money the ESOP had ever held in assets.  (Pl.'s Resp. at 2.)

Defendants make light of these new assertions.  In Defendants' view, Novosel is asking the court "to ignore the events that transpired in the intervening 12 months, and infer that Defendants acted arbitrarily and capriciously because they did not predict the economy and markets would recover by the end of 2020."  (Defs.' Reply [29] at 5.)  At this stage of the proceeding, however, the court draws all reasonable inferences in Plaintiff's favor.  It is reasonable to infer that Azcon's end-of-year comeback was foreseeable by August 3, 2020.  At a minimum, such an inference is at least as reasonable as Azcon's implicit suggestion that the company made a completely unexpected and miraculous recovery in the final four months of 2020.  If that in fact happened, Azcon will be able to demonstrate it through discovery.

Novosel also asserts that she was one of only a few plan beneficiaries negatively impacted by the interim valuation.  Azcon's filings with the DOL confirm that, although the ESOP held assets of $13,999,855 in 2020, it paid out only $192,409 in benefits.  (Ex. 4 to Pl.'s Resp. [27-4] at 4.)  Of that amount, nearly one third ($60,824, as alleged in the complaint) were paid to Novosel.  (Am. Compl. ¶ 37.)  These figures support the inference that Novosel was one of only "two or three individuals" who were negatively affected by the interim valuation while the ESOP assets grew.  (Pl.'s Resp. at 5.)  The Form 5500 figures throw shade on Azcon's argument that "[i]n

effect, Plaintiff is asking this Court to authorize a distribution that would take money out of the pockets of other Plan participants (who are not parties to this action) and place money in her own pockets." (Defs.' Br. at 2.) Instead, the numbers suggest plan participants other than Novosel (and the one or two others who received a depressed distribution for 2020) are retaining their interest in a disproportionately generous sum. Defendants briefs harken to the Committee's duty to administer the plan fairly for all participants, but do not explain how its interim valuation was fair to the few plan beneficiaries who received substantially depressed payouts despite the company's large gains.[10]

Finally, Novosel suggests that the valuation firm "may not have had the correct financials, and reached their conclusions based on faulty or incomplete information," pointing to informational lacunae in Azcon's DOL filings. For example, Azcon's Form 5500 shows it received $415,675 from Employers (neither party provides an explanation why Azcon would receive such funds) and $4,599,832 in the nondescript category of "other income." (Ex. 4 to Pl.'s Resp. [27-5].) Plaintiff argues that, since Azcon has not disclosed any of the valuation data, it is not possible to know if the valuation firm took this additional income (whatever its source may be) into account. (Pl.'s Resp. at 5.) On this theme, Novosel also alleges that Azcon failed to provide DOL with the summary report or the interim valuation report notice, as required under 29 C.F.R. § 2520. (Pl.'s Resp. at 3.)

The additional allegations Novosel adduces from the DOL summary, ESOP annual reports, and PPP information, all bolster the allegations of Claim I. The additional allegations provide support for the inference that, even at the time Mantia suggested the interim valuation,

---

[10] The closest Defendants come is arguing that "a deflated valuation" is not improper because such a valuation would guard against the risk that "a Plan participant [might] withdraw amounts to the detriment of the finite funds properly available to the other Plan participants." (Defs.' Br. at 4.) Defendants do not address the reverse concern: that a disproportionately deflated payout may be unfair to plan participants who exercise their right to an early withdrawal. As the few plan participants—who, like Novosel, elect to withdraw their shares early—ought not benefit at the expense of the many who do not, so too it is not fair for the many plan participants to enjoy greater value at the expense of the few.

Azcon was not doing as poorly as it represented to shareholders in August 2020. In its current form, Claim I of the Amended Complaint survives a pleading challenge. In any event, had the court granted Defendant's motion to dismiss Claim I, it would have allowed leave for Novosel to file a further amended complaint, and will now direct that she do so, to ensure that the operative pleading includes the more developed account presented here.

## II. Cutback of Accrued Benefits

Novosel alleges, as she did in her first complaint, that the Committee violated Section 204 of ERISA, 29 U.S.C. § 1054(g), by amending the plan in a manner that reduced her accrued benefit. The court previously dismissed the claim for several reasons. First, the "interim valuation" was not inconsistent with the plan's language. *Novosel*, 2022 WL 672776, at *6. Second, Section 7.13 of the 2017 plan (the amended provision with which Novosel took issue), does not apply directly to Novosel's claim; that provision concerns diversification rights, whereas Novosel's claims regard distribution rights. *Id.* at *7. Third, even if Section 7.13 applied to Novosel's claims, that amendment provides that the Committee can only make interim valuations pursuant to Section 1.5 (the unamended provision defining "Accounting Date"). *Id.* The court further determined that distribution payments at issue in Novosel's case are governed by Section 7.4 of the plan, not Section 7.13, so Novosel's cutback claim failed. *Id.* at *8.

In her amended complaint, Novosel does little to improve on her earlier pleading: she now alleges that Mantia sought an interim valuation pursuant to the Section 7.13 amendment within the 2017 Plan. (Am. Compl. ¶ 45.) Her purpose for adding this allegation, she says, is to reveal "Azcon's intent to assert the application of the 2017 plan." (Pl.'s Resp. at 6.) This new allegation bears no practical payoff, which Plaintiff herself acknowledges. (*Id.* at 7 ("If the Court concludes this reasoning for its previous decision still applies, Plaintiff recognizes her argument as to [Claim] II may fail.").) Presented with no new argument or legal authority casting doubt on its former order, the court stands by its prior reasoning and dismisses Claim II of the Amended Complaint.

12

## CONCLUSION

Defendants' motion to dismiss [24] is granted in part and denied in part. The court denies Defendants' motion with regards to the arbitrary and capricious claims in Claim I and directs Plaintiff to file a second amended complaint, on or before January 23, 2023, including the additional facts discovered since Defendants filed their motion to dismiss. Defendants' responsive pleading will be due on or before February 10, 2023. The court grants Defendants' motion with regards to the cutback claim of Claim II. The parties are encouraged to discuss settlement, and are invited to request a referral to the Magistrate Judge for that purpose.

ENTER:

Dated: January 9, 2023

_____
REBECCA R. PALLMEYER
United States District Judge